**JS-6**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KESLY POVEDA BERMUDEZ, | ) NO. EDCV 26-01711-KS[1] |
| Petitioner, | ) |
| | ) |
| v. | ) **ORDER GRANTING UNOPPOSED** |
| | ) **PETITION FOR WRIT OF** |
| FERETI SEMAIA, et. al., | ) **HABEAS CORPUS (§ 2241)** |
| | ) |
| Respondents. | ) |
| _____ | ) |

On April 22, 2026, Petitioner Kesley Poveda Bermudez ("Petitioner" or "Bermudez") filed a petition for writ of habeas corpus (the "Petition") pursuant to 28 U.S.C. §2241 seeking release from detention at the Adelanto Immigration and Customers Enforcement ("ICE") Processing Center. (Dkt. No. 1 (Pet. at 2).)  On April 15, 2026, pursuant to the Court's General Order 26-05[2], which established standard procedures and an expedited briefing schedule for immigration habeas petitions, Respondents filed an Answer to the Petition. (Dkt. No. 7.)  The Answer states: "The Respondents are not presenting an opposition argument.  Should the Court

---

[1]  The parties have voluntarily consented to have a Magistrate Judge conduct all further proceedings in this case, including trial and entry of judgment.  (Dkt. No. 9.)

[2]  The Central District of California adopted General Order 26-05 on April 8, 2026.

1

enter relief, judgment may be entered, and consistent with the 'expeditious resolution' of § 2241 Immigration Petitions required by the General Order [26-05], no more filings or proceedings will be necessary in this matter." (*Id.* (Answer) at 2.)  Petitioner filed a Traverse in support of the Petition, noting Respondents' non-opposition to "any of the central relief requested" and seeking Petitioner's release from "unlawful re-detention" at the Adelanto ICE facility.  (Dkt. No. 8.)

## BACKGROUND

Bermudez is a forty-two-year-old who has "lived freely in the United States for over two decades under the government's own supervision" until ICE "abruptly revoked his liberty without notice, without a hearing and without any change in circumstances."  (Pet. ¶ 1.) Bermudez entered the United States in the early 2000's and was "affirmatively released by the Department of Homeland Security ('DHS') and has fully complied with every condition imposed on him in the intervening two decades." (*Id.*)  On February 3, 2026, DHS "re-arrested [Bermudez] at a routine family ICE check-in – supposedly because they had a warrant from State Court for him that's nowhere to be found."  (Pet. ¶ 2.)  The Petition further asserts that DHS has not alleged any misconduct by Petitioner, no violation occurred, and no "individualized custody determination was made" before Bermudez was deprived of his liberty. (*Id.*)

In the Petition, Bermudez argues that his current incarceration is unconstitutional.  (Pet. at ¶ 3.)  Bermudez contends that "[o]nce the government affirmatively releases a person from physical custody and allows them to live in the community, that conditional liberty becomes a protected interest that cannot be revoked absent due process," and here, DHS has afforded Bermudez no due process.  (*Id.*)  The Petition avers that Bermudez "was separated from his parents and younger brothers, two of whom are United States citizens – questioned about his age, escorted into another room and detained without warning or explanation[.]" (*Id.*)  Further,

Bermudez received no warning "that his liberty was at risk, no opportunity to contest the government's action, and no hearing before a neutral adjudicator." (*Id.*) According to the Petition, "[t]he only thing that changed between years of lawful community residence and sudden incarceration was a supposed warrant issued for his arrest that was never displayed to him nor existent." (*Id.*)

The Petition stresses that "DHS may not revive border-detention authority after it has affirmatively released a person into the community, nor may it revoke a conditional liberty based on an unlawful reclassification untethered to any individualized assessment of danger of flight risk." (*Id.* ¶ 4.) Petitioner argues that courts throughout this District have rejected the practice of re-detaining long-released individuals at routine-ICE check-ins without notice, without changed circumstances and without process." (*Id.*)

Bermudez maintains that the only appropriate remedy here is immediate release. (*Id.* ¶ 6.) He argues that his "continued incarceration serves no legitimate government interest" because Bermudez can "safely reside in the community while complying with supervision requirements"; "he has no criminal history, no history of noncompliance, and deep family ties." (*Id.*)

Based on these allegations, the Petition presents two claims for relief:

- Count One: unlawful detention under the Immigration and Nationality Act and Administrative Procedure Act; and
- Count Two: violation of the Fifth Amendment's Due Process Clause.

(Pet. at 16 -19.)

\\

3

## LEGAL STANDARD

### A. Jurisdiction

This Court has jurisdiction in this matter pursuant to 28 U.S.C. §1441, as Bermudez is held in custody under the authority of the United States and seeks a writ of habeas corpus. *See,* 28 U.S.C. §2241(c)(3). Jurisdiction is also proper under 28 U.S.C. §1331 as this matter arises under the Constitution, laws and treaties of the United States and pursuant to 5 U.S.C. §§ 701-06, because the Petition challenges an agency's action as arbitrary, capricious and contrary to law. Further, pursuant to 28 U.S.C. §§ 2201-02, the Court has authority to grant declaratory and injunctive relief.

Venue is proper in this district because Bermudez is held in detention at the Adelanto ICE processing center located within the Central District of California.

### B. Due Process

The Supreme Court has held that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Pinson v. Carvajal*, 69 F.4th 1059, 1067 (9th Cir. 2023). A petitioner has the burden to demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *See Espinosa v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Furthermore, the Due Process Clause of the Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint-lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Significantly, the High Court has recognized that these due process rights extend to noncitizens, including those who are unlawfully in the United States. *Id.* at 693.

### C. Governing Statute

Two separate statutes govern federal immigration detention before a final order: 8 U.S.C. §§ 1225 and 1226. These statutes are distinct and, as relevant here, function in different circumstances. *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Section 1225 applies to "aliens seeking admission," i.e., individuals in border or initial inspection/expedited removal proceedings and, in such cases, the statute authorizes mandatory detention only during a limited time necessary for threshold inspection. *Id.* at 303. Section 1225 thus addresses procedures that are not applicable to Bermudez's circumstances.

Section 1226, on the other hand, applies to persons already in the United States who are "pending a decision on whether the alien is to be removed." 8 U.S.C. § 1226(a). This statute allows the government to continue to detain, but also provides that the government "may release," a person on bond or conditional parole, and longstanding federal regulations guarantee individuals in this category access to a bond hearing before a neutral adjudicator. *Jennings,* 583 U.S. at 306; *see also* 8 C.F.R. §§ 236.1(c)(8), (d)(1).

### DISCUSSION

Bermudez's circumstances fall within section 1226's framework: he was not apprehended at a border crossing, was granted release by DHS more than two decades ago, and has "complied fully with every condition imposed on him" during that time. (Pet. at 2.) Even though the statute gives ICE discretion to detain or release a noncitizen, courts have recognized that the decision to release an individual from custody "creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up

to the . . . conditions of [release].'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). In *Pinchi*, the district court reasoned that "initial release from ICE custody further reflects 'a determination by the government that [an individual is] neither a flight risk nor a danger to the community.'" *Id.* at 1034. In such circumstances, generally DHS may not rearrest a previously released noncitizen without a change of circumstances. *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 WL 2637503, at *1 (N.D. Cal. Sep. 12, 2025) (citing *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021).

Here, Petitioner was initially detained, then released subject to conditions, and while on release, "complied fully with every condition imposed on him for years." (Pet. at 2.) Thus, he maintains a protected liberty interest in remaining free from custody. *Figueroa Morales v. Bondi*, No. 26-cv-0679-GPC (BJW), 2026 WL 370187, at *2 (S.D. Cal. Feb. 10, 2026). Indeed, the Supreme Court has held that conditional freedom cannot be revoked without due process. *Morrissey v. Brewster*, 408 U.S. 471, 482 (1972). Petitioner argues these principles have been directly applied to post-release immigration re-detention. (Pet. at 11.) The due process analysis requires courts to consider three factors: (1) the private interest affected; (2) the risk of erroneous deprivation under the procedures used and the value of any additional safeguards; and (3) the government's interest, including the administrative burden of additional procedures. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As Petitioner emphasizes, the "private interest here is at its apex: freedom from civil incarceration." (Pet. at 12.) The risk of error is severe where Petitioner has been re-detained without any opportunity to challenge the basis for his re-detention, and without a neutral adjudication. While the government has a legitimate interest in community safety and preventing flight, these interests are precisely the interests that can be assessed through an individualized determination in the bond process under § 1226(a). Here, however, there is no evidence of any change in circumstances that warranted Petitioner's sudden rearrest when he

6

appeared in February 2026 for a "routine family ICE check-in." (*Id.*)  There are no facts before the Court that suggest Petitioner posed either a risk of flight or any danger to the community.

As emphasized in the Petition, Mr. Bermudez has appeared at all required ICE check-ins, "complied with every condition of supervision," "lived continuously with his family at a known address," attended church periodically, "offered humanitarian help to others for free, and "remained fully engaged in his immigration proceedings." (Pet. at 13.)  The only basis for Petitioner's re-detention was apparently a state court warrant that DHS never produced. (*Id.* at 14.)  Petitioner further argues that, at this point, "the Constitution does not permit DHS to cure those violations through belated process." (*Id.*)  Moreover, Respondents present no facts or evidence to the contrary.

Petitioner argues that because DHS has failed to provide the required due process and failed to establish any basis for Petitioner's re-detention, Petitioner's continued detention is unlawful and Petitioner's immediate release should be required. (Pet. at 15.)  The Court agrees, particularly as Respondents offer no independent basis for continued detention and no opposition to the Petition.  (Answer at 2.)

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

7

**CONCLUSION AND ORDER**

For the reasons outlined above, this Court ORDERS that: (1) the Petition be GRANTED as to Claims One and Two;  (2) Petitioner be released from custody immediately and must reside at his prior residence upon his release; (3) Petitioner may not be re-detained without an affirmative showing of changed circumstances and an opportunity for an individualized custody determination by a neutral adjudicator; and (4) judgment be entered accordingly.

DATE: April 26, 2026

_____
KAREN L. STEVENSON
CHIEF U.S. MAGISTRATE JUDGE

8